# Illinois Official Reports

## Appellate Court

---

### *Laurent v. Johnson*, 2017 IL App (3d) 160627

---

| | |
|---|---|
| Appellate Court Caption | JUDITH LAURENT, Executor of the Estate of Thomas J. Laurent, Deceased, Plaintiff-Appellant, v. KAY JOHNSON, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-16-0627 |
| Filed | September 18, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Iroquois County, No. 14-L-8; the Hon. Ronald J. Gerts, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ronald E. Boyer, of Ronald E. Boyer, P.C., of Watseka, for appellant.<br><br>Timothy A. Alspach and Thomas A. Carton, of Bullaro & Carton, P.C., of Chicago, for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices O'Brien and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Judith Laurent, as the executor of the estate of her deceased husband, Thomas J. Laurent, filed suit against defendant, attorney Kay Johnson, for legal malpractice related to Johnson's handling of the estate's lawsuit for breach of contract against Thomas's health insurer for reimbursement for Thomas's medical expenses (the underlying lawsuit). During pretrial proceedings, Johnson filed a motion for summary judgment, alleging that Judith could not establish proximate cause or damages in the instant malpractice case because her claim in the underlying lawsuit would not have been successful and had been released and extinguished. After a hearing, the trial court agreed with Johnson and granted her motion for summary judgment. Judith appeals. We affirm the trial court's ruling.

¶ 2                                    FACTS

¶ 3    In September 2005, Judith Laurent and her husband, Thomas, purchased a health insurance policy for Thomas from insurance agent Gary Nohovig. The policy was issued by Time Insurance Company (Time) and went into effect the following month. Of relevance to this appeal, the policy provided that (1) the maximum policy limit for any calendar year was $100,000, (2) the insured could not file a lawsuit regarding the policy more than three years after written proof of loss was given to Time (a three-year statute of limitations), (3) the policy provisions could not be changed except by a written alteration attached to the policy and signed by a Time executive officer, and (4) no agent or employee of Time had authority to waive or change any policy provision.

¶ 4    In August 2006, while the policy was in effect, Thomas suffered an accidental fall and was seriously injured. He passed away the following month. From the time of the accident until the time of his death, Thomas incurred substantial medical expenses, which were presumably covered under the Time health insurance policy. Time paid out the $100,000 policy limit, but Thomas's expenses exceeded that amount. Judith requested that Time make additional payments, but Time refused, and Judith was eventually required to pay the medical expenses from her own (and presumably Thomas's) personal funds.

¶ 5    In October 2006, Judith hired defendant, Kay Johnson, a licensed Illinois attorney, to open an estate for Thomas; to collect all real estate, personal property, and causes of action owned by Thomas at the time of his death; and to administer all claims filed against the estate. After the estate was opened, Judith was named executor. One of the assets of the estate was a claim for reimbursement from Time for Thomas's medical expenses.

¶ 6    In November 2010, more than four years after Thomas's accident, Johnson filed suit on Judith's behalf in the state trial court against Nohovig and Time for breach of contract for Time's failure to pay Thomas's remaining medical expenses resulting from the accident (medical bills that were incurred in August and September 2006). The complaint alleged, among other things, that Nohovig was Time's agent and that he had represented to Judith and Thomas that the most that Thomas would have to pay out-of-pocket during any given year for a claim was $4000 (that the policy was essentially unlimited). Although the lawsuit was filed in November 2010, Johnson did not attempt service of process until eight months later, in July 2011, when summons was first issued. In addition, Johnson did not have defendant Time served with summons until August 2011, over nine months after the breach of contract case had been filed.

¶ 7    In September 2011, Time removed the underlying breach of contract case to federal court. Johnson withdrew from the case, and Judith obtained a new attorney—the same attorney that she now has on appeal. Time filed a motion to dismiss the suit, alleging, among other things, that Judith had failed to file the suit within the three-year statute of limitations established by the policy and had failed to exercise reasonable diligence in effectuating service of process. In response to the motion to dismiss, Judith sought leave to file a proposed amended complaint. In the proposed amended complaint, Judith again stated or alleged that Nohovig was Time's agent.

¶ 8    In April 2012, a magistrate judge, who had been assigned the matter, issued his report and recommendations. The magistrate judge recommended that Time's motion to dismiss Judith's complaint be granted, that the case be dismissed with prejudice, and that Judith's request to file the proposed amended complaint be denied. After Judith's objections were filed, a federal district court judge agreed with and accepted the report and recommendations, granted Time's motion to dismiss, and dismissed Judith's breach of contract case against Time (and Nohovig) with prejudice. The order dismissing the breach of contract case in the federal court was entered on May 7, 2012.

¶ 9    On May 15, 2012, Judith executed a written release and settlement agreement with Nohovig as to the federal court case (the underlying breach of contract case). Among other things, the release and settlement agreement provided that:

"For the sole consideration of Nine Thousand Dollars ($9,000.00) ('Settlement Sum'), [Judith] release[d] and forever discharge[d] Nohovig, including his current and former directors, current and former officers, current and former agents, current and former employees, subsidiaries, parent corporations, attorneys and insurers, and all other affiliates, persons, firms or corporations, none of whom admit any liability, from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, direct or derivative, known or unknown, for any and all acts and/or omissions of Nohovig, including his current and former directors, current and former officers, current and former agents, current and former employees, subsidiaries, parent corporations, attorneys and insurers, and all other affiliates, persons, firms or corporations, occurring prior to this Agreement's Effective Date."

¶ 10    In March 2014, Judith, as the executor of Thomas's estate, filed a complaint for legal malpractice against Johnson in the current case. In the complaint, Judith again stated or alleged that Nohovig was Time's agent. Of relevance to this appeal, Judith also alleged that (1) Johnson had failed to file suit against Time until approximately two years after the statute of limitations had run, (2) Johnson had not attempted service of process on Time or Nohovig until eight months after the complaint had been filed, and (3) as a result of Johnson's negligence, Judith (or the estate) was denied relief on her claims in the underlying breach of contract case.

¶ 11    In June 2016, Johnson filed a motion for summary judgment on the instant legal malpractice complaint, alleging that Judith could not prove proximate cause or damages in the malpractice case because Judith's claim in the underlying breach of contract lawsuit would not have been successful and had been released and extinguished. Attached to Johnson's motion for summary judgment (or the memo in support thereof) were various supporting documents, including Judith's response to Johnson's request for admission wherein Judith admitted that she had entered into a settlement with Nohovig in the federal court case and again stated that Nohovig was Time's agent; the release and settlement agreement from the federal court case

that was entered into between Judith and Nohovig; a portion of Thomas's health insurance policy issued by Time; Judith's complaint for breach of contract against Nohovig and Time in the underlying case; Judith's motion for leave to file the proposed amended complaint in the federal court case; and an e-mail from Judith's attorney to Nohovig's attorney dated March 15, 2012, stating that Judith had instructed her attorney to settle the federal court case for $9000 in exchange for a full and complete release of Nohovig and asking Nohovig's attorney to prepare the release and a stipulation to dismiss the federal court case.

¶ 12      Judith filed a response and opposed Johnson's motion for summary judgment. Of relevance to this appeal, in the response, Judith conceded that the release and settlement agreement that she had entered into with Nohovig in the federal court case also released Time from liability as well. Judith claimed, however, that the release and settlement agreement was not entered into prior to the dismissal of the federal court case and had no materiality on the issue of whether Judith's underlying breach of contract case would have been successful if it had been timely filed. Attached to Judith's response as supporting documents were the magistrate judge's report and recommendations from the federal court case and the district court judge's order accepting the report and recommendations and granting Time's motion to dismiss.

¶ 13      In September 2016, after Johnson filed her reply to Judith's response, a hearing was held on Johnson's motion for summary judgment. The trial court listened to the arguments of the attorneys and then took the motion under advisement. The trial court later issued a written ruling and granted summary judgment for Johnson on the grounds asserted by Johnson in her motion, although the basis for the trial court's grant of summary judgment was somewhat implicitly stated in the trial court's written order. In reaching that conclusion, the trial court found, among other things, that (1) Nohovig was Time's agent and (2) the release and settlement agreement that Judith had entered into as to the federal court case (the underlying breach of contract lawsuit) released not only Nohovig but also released Time from liability to Judith as well. Judith appealed.

¶ 14                                         ANALYSIS

¶ 15      On appeal, Judith argues that the trial court erred in granting summary judgment for Johnson on Judith's (the estate's) legal malpractice complaint. Judith asserts that summary judgment should not have been granted for Johnson because (1) a genuine issue of material fact exists as to whether Nohovig was Time's agent, Judith and Thomas's agent, or both; (2) the rule cited by Johnson and presumably applied by the trial court—that an insured may not recover for an error or contradiction in an insurance policy when the insured failed in his duty to read the policy and to notify the insurer of that particular error or contradiction (referred to as the discrepancy rule)—does not apply in this case to bar recovery if Nohovig was acting as Judith and Thomas's agent when he sold the policy to them (or was acting as both Judith and Thomas's agent and as Time's agent); (3) even if the action against Time could not be maintained, an action still remained against Nohovig for failing to exercise ordinary care in procuring the health insurance policy for Judith and Thomas, and Time could very well have been liable under the doctrine of *respondeat superior* for Nohovig's negligence; (4) the release and settlement agreement executed by Judith did not absolve Johnson for her negligence in handling the underlying case because the release and settlement agreement was not entered into until after Johnson's negligence, and the damages flowing therefrom, had already

occurred; (5) Judith would not have entered into the release and settlement agreement but for the magistrate judge's report and recommendations and the district court judge's ruling; (6) the release and settlement agreement was simply a means of obtaining some recovery for Judith, despite Johnson's negligence in handling the underlying case; and (7) the e-mail in the underlying case from Judith's attorney to Nohovig's attorney, which was presented as a supporting document in the summary judgment proceeding in the instant legal malpractice case, was insufficient to establish that Judith and Nohovig had entered into a settlement agreement as of the March 2012 e-mail date (asserted in Judith's reply brief). In making those assertions, Judith acknowledges that the result in the instant case would be different if she had entered into the release and settlement agreement with Nohovig in the underlying case before her attorney had exhausted all of her claims against Nohovig. For all of the reasons stated, Judith asks that we reverse the trial court's grant of summary judgment and that we remand this case for further proceedings.

¶ 16        Johnson argues that the trial court's ruling was proper and should be upheld. In support of that argument, Johnson asserts that (1) Nohovig was Time's agent, as the trial court correctly found, and Judith's claim in the underlying case, therefore, was barred by the discrepancy rule and would not have been successful; (2) in the alternative, even if Nohovig was Judith and Thomas's agent, Judith still would not have prevailed in the underlying case since Nohovig did not have any authority to alter the provisions of the insurance policy; (3) Judith's attempt in this appeal to add a new tort theory of relief as to the underlying case (that Nohovig was negligent in obtaining the health insurance policy for Thomas and/or that Johnson was negligent in failing to plead a tort claim against Nohovig) is forfeited because Judith did not assert a tort theory of relief in the underlying case against Nohovig and did not assert in the trial court in the instant legal malpractice case Johnson's failure to plead a tort claim against Nohovig as one of the acts of legal malpractice; (4) in the alternative, Judith cannot now assert a tort theory of relief as to the underlying case as a basis upon which she could have recovered because she voluntarily settled and released all of her claims and potential claims against Nohovig and Time; (5) the settlement agreement was reached in the underlying case in federal court in March 2012 when Judith's attorney sent the e-mail to Nohovig's attorney accepting the offer to settle for $9000, which, contrary to Judith's representations in the trial court and on appeal, was before the federal magistrate judge issued his report and recommendations, before the federal district court judge entered the order granting Time's motion to dismiss the case with prejudice, and before Judith's legal malpractice claim had accrued; (6) despite her claims on appeal, Judith has produced no evidence that she settled the underlying claim for a depressed value or that her settlement was not voluntarily made; (7) Judith settled with Nohovig, Time's purported agent, in the underlying case and, therefore, any *respondeat superior* claims against Time were extinguished; and (8) Judith also would not have been able to recover against Time in the underlying breach of contract case since the release and settlement agreement that she entered into directly released Time for any derivative *respondeat superior* liability claims that Judith may have had against Time. For all of the reasons set forth, Johnson asks that we affirm the trial court's grant of summary judgment in her favor.

¶ 17        The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file,

when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 18    In bringing a suit for legal malpractice, the plaintiff client is often called upon to litigate a case within a case—to establish that the plaintiff client would have been compensated for an injury caused by a third party if the negligence of the plaintiff's own attorney in that previous case would not have occurred. See *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). To prevail on a claim of legal malpractice, a plaintiff client must plead and prove the following four elements: (1) that the defendant attorney owed the plaintiff client a duty of due care arising from the attorney-client relationship, (2) that the defendant breached that duty by committing a negligent act or omission, (3) that the defendant's breach of duty proximately caused the plaintiff's injury, and (4) that the plaintiff suffered actual damages. See *id.* at 225-26; *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 939 (2009). When the alleged negligence of the plaintiff's attorney involves litigation, no actionable claim for legal malpractice exists unless the alleged negligence resulted in the loss of an underlying cause of action. *Tri-G, Inc.*, 222 Ill. 2d at 226. More specifically as to the facts of the instant case, if an underlying action never reached trial because of the alleged negligence of the plaintiff's attorney, the plaintiff must prove that but for his attorney's negligence, he would have been successful in the underlying action. *Id.*

¶ 19    In the present case, after having reviewed the record, we find that summary judgment was properly granted for Johnson on Judith's legal malpractice complaint because Judith was unable to establish either proximate cause or damages. See 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43; *Tri-G, Inc.*, 222 Ill. 2d at 226. Specifically, the pleadings and supporting documents presented in the summary judgment proceeding established that any alleged legal malpractice on the part of Johnson could not have harmed Judith's ability to recover in the underlying breach of contract case for two reasons. First, there was no chance that Judith's claim for breach of contract against Nohovig and Time in the underlying case would have been successful. In cases such as the underlying case, where an insured sues his insurer and/or his insurer's agent claiming that a policy provision should not be given effect because the provision was incorrect or not in keeping with what the insured was told by the insurer or the agent, the insured may not recover against the insurer or the agent for that error or discrepancy if the insured failed in his duty to read the policy and to inform the insurer or the agent of that error or the discrepancy in the policy (the discrepancy rule). See *Floral Consultants, Ltd. v. Hanover Insurance Co.*, 128 Ill. App. 3d 173, 176 (1984); *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 29. In the underlying

case, Judith and Thomas failed in their duty to read the policy and to inform either Nohovig or Time about the alleged error in the policy (that the policy contained a $100,000 maximum calendar year limit instead of being unlimited). Judith and Thomas (the estate), therefore, could not recover against Nohovig or Time in the underlying case for the alleged error or discrepancy in the policy. See *Floral Consultants, Ltd.*, 128 Ill. App. 3d at 176; *Gaudina*, 2014 IL App (1st) 131264, ¶ 29.

¶ 20    Judith claims on appeal that a genuine issue of material fact exists as to Nohovig's status (whether Nohovig was Time's agent, Judith and Thomas's agent, or both) so as to avoid the application of the discrepancy rule, at least at the summary judgment stage of the proceedings. We are not persuaded, however, by that argument. As the trial court noted, Judith pled, alleged, or stated that Nohovig was Time's agent numerous times—in the original complaint in the underlying case, in the proposed amended complaint in the underlying case, in the legal malpractice complaint in the instant case, and in her response to Johnson's request for admission in the instant case. For the purposes of summary judgment, Judith is held to those pleadings and admissions. See *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994) (the plaintiff fixes the issues in controversy and the theories upon which recovery is sought by the allegations in her complaint; in ruling on a summary judgment motion filed by the defendant, the court looks to the pleadings to determine the issues in controversy and decides if the defendant is entitled to judgment as a matter of law on the claims as pled by the plaintiff). Judith is unable to claim at this point, therefore, that Nohovig was not Time's agent or that a genuine issue of material fact exists as to Nohovig status in that regard. See *id.*

¶ 21    The second reason why any alleged legal malpractice on the part of Johnson could not have harmed Judith's ability to recover in the underlying breach of contract case is because Judith settled her breach of contract claim and all other potential claims against Nohovig and Time in the underlying case at a point when Nohovig and Time were still viable defendants. Contrary to Judith's assertion on appeal, it is apparent from the supporting documents in the record that the settlement agreement was entered into between Judith and Nohovig in the underlying case in March 2012 when Judith's attorney sent Nohovig's attorney an e-mail accepting the settlement offer and asking Nohovig's attorney to prepare a release and a stipulation to dismiss the federal case. The settlement agreement was entered into about month before the magistrate judge had issued his report and recommendations in the federal case and about two months before the district court judge had granted Nohovig and Time's motion to dismiss. We do not agree with Judith's assertion on appeal that the e-mail from her attorney to Nohovig's attorney in the underlying case was insufficient to establish that the settlement agreement was entered into on the March 2012 e-mail date. Furthermore, as Johnson correctly points out, the record on appeal lacks any indication that Judith's settlement in the underlying case was not voluntary or that Judith settled her case for a depressed value.

¶ 22    Although Judith maintains on appeal that the settlement agreement did not release any potential tort claims she had against Nohovig (and Time by way of *respondeat superior*) for negligently procuring the policy at issue, that argument is not well-taken. Judith did not plead a tort claim in the underlying case, and the settlement agreement was broadly drafted so as to release any and all possible claims Judith had against Nohovig or Time.

¶ 23    In sum, we find that the trial court correctly determined that Judith could not establish proximate cause or damages in the instant legal malpractice case. Because we have reached that conclusion, we hold that the trial court properly granted summary judgment for Johnson

on Judith's legal malpractice complaint. We need not, therefore, address any of the other assertions made by the parties in support of their arguments on appeal.

¶ 24                              CONCLUSION

¶ 25          For the foregoing reasons, we affirm the judgment of the circuit court of Iroquois County.

¶ 26          Affirmed.